McNULTY, Chief Judge.
Appellant corporation appeals an adverse summary judgment entered on a two-count complaint filed by appellee Rigel. Count I sought rescission under the Florida Blue Sky Laws[1] for the sale of unregistered securities, and Count II was an action in negligence for damages. We reverse.
In May of 1969 appellee purchased certain shares of Crown Western Investments, Inc., Dallas Fund, through his stockbroker Goodbody & Co., a limited partnership, the predecessor of appellant corporation. These shares were not registered either with the State of Florida or with the SEC. The instant suit, filed only against the corporation and not joining the partnership, was instituted in February 1971, within two years of the purchase date of the shares, so is timely with respect to the rescission count.
*273 The negligence count is predicated on the fact that while Rigel’s shares of the aforesaid Fund were still held to his account in Goodbody & Co.’s (the partnership’s) “street account” pending transfer into his name (which was accomplished in due course) the Dallas Fund made a voluntary rescission offer under which shareholders could obtain redemption for the full purchase price. Rigel alleges that Goodbody & Co. negligently failed to advise him of the rescission offer, for which he claims resultant damages.
Only one point on appeal merits discussion, that relating to whether, assuming the truth of everything complained of by Rigel, his cause of action lies against appellant corporation as successor to Goodbody & Co., the limited partnership. As to this, it is undisputed that appellant corporation is a Delaware corporation chartered in November 1970, about a year and a half after the unregistered shares were acquired by Rigel and about the same length of time after the alleged negligence. The corporation is a wholly owned subsidiary of Merrill Lynch, Pierce, Fenner & Smith, Inc. and was formed to purchase the Goodbody partnership, which, at that time, was apparently in some financial difficulty and under a mandate from the New York Stock Exchange to refinance. The record is devoid of any evidence, or for that matter of any allegations, of any interconnecting directorship or control between appellant corporation and the partnership or between Merrill Lynch, Pierce, Fenner & Smith and the partnership. Rigel’s pursuit of appellant, in fact, is predicated on an “INSTRUMENT OF ASSUMPTION OF LIABILITIES” in which, he argues, appellant corporation assumed responsibility for his claims against the partnership. This instrument provides in material part as follows:
“KNOW ALL MEN BY THESE PRESENTS, that:
“WHEREAS, Goodbody & Co., a New York limited partnership (The ‘Partnership’) entered into a certain Financing Agreement dated November 5, 1970 with Merrill Lynch, Pierce, Fenner & Smith Incorporated, a Delaware corporation (‘Merrill Lynch’), whereby the Partnership is to convey, assign, transfer, deliver and set over to Goodbody & Co. Incorporated, a Delaware corporation (the ‘Corporation’), certain assets and properties, and the Corporation is to assume these liabilities of the Partnership existing on this date [December 11, 1970] hereinafter set forth, all under the terms and in accordance with the provisions of the said Financing Agreement;
“NOW, THEREFORE, in consideration of the premises and in accordance with the provisions of said Financing Agreement, and for other good and valuable considerations, receipt of which is hereby acknowledged, the Corporation does hereby assume and undertake to pay or discharge when due, and thereafter hold the Partnership harmless with respect to, the following liabilities of the Partnership as they exist at the close of business on the date hereof:

it* * *

“c. All of the Partnership’s obligations and liabilities for open securities and commodities transactions made in the ordinary course of its business for the Partnership’s own account.” (Italics ours.)
None of the listed class of liabilities assumed in the instrument even remotely resembles the claims made by Rigel, except perhaps those referred to in the quoted paragraph c., and that expressly relates to transactions made for the partnership (i. e., Goodbody’s) account — not for their clients’ former accounts. Therefore, Rigel can find no support in the quoted instrument itself.
With respect to the “Financing Agreement” referred to in the quoted instrument, that agreement, after providing for the whys and wherefores of the purchase by Merrill Lynch, Pierce, Fenner & Smith of the Goodbody Partnership, also provides for the assumption by Merrill Lynch of certain described liabilities of the partnership. But, again, none of them embraces a claim either for rescission or for negligence under the circumstances alleged herein by Rigel. The financial agreement then provides as follows:
*274 “This Agreement is not intended to, and shall not under any circumstances create any enforceable right or benefit in any person whatsoever, other than the Partnership, the Corporation, or its Des-ignee, nor shall any other person whatsoever be entitled to base any cause of action on the existence of this Agreement.”
Clearly, the agreement repudiated any third-party claims.
The matter therefore devolves to this. Appellant corporation was totally nonexistent at the time Rigel’s claimed causes of action arose. There is no allegation or evidence of a fraudulent conveyance by the partnership to the corporation nor can one fictitiously be constructed from the allegations or proof. The appellant corporation was neither the issuer nor seller of the unregistered securities, nor the agent of either, and was not in privity with Rigel in any way at any time. Accordingly, neither the rescission count nor the negligence count can stand in the face of these facts alone.
Additionally, it cannot be found in allegations or proof that appellant corporation ratified any actions of the partnership or assumed any of its obligations to Rigel. Not only was such assumption of liability limited in both of the aforesaid agreements to certain specific obligations, not including those as claimed by Rigel, but the “Financial Agreement” expressly limited the scope of the agreements so as to deny their effect as a predicate for a cause of action to any and all save the immediate parties thereto.
In summary, we recognize and apply the clear general rule that absent an express or implied assumption of liability, a corporation is not liable for the contractual or tort liabilities of a preexisting partnership.[2] There is no such express or implied assumption here.
The trial court was therefore in error in awarding summary judgment to Rigel. More than that, since summary judgment was also moved for by appellant corporation, the court erred in not granting its motion for summary judgment. The record affirmatively demonstrates that there is no material issue of fact a resolution of which would entitle Rigel to recovery.
In view whereof, the judgment appealed from should be, and it is hereby, reversed; and the cause is remanded with directions that summary judgment be entered in favor of appellant.
BOARDMAN and GRIMES, JJ., concur.

. Sec. 517.21, Fla.Stat.

. See, e. g., 18 C.J.S. Corporations § 143c, pp. 544, 546.